**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| **IN RE** | |
| **VICTOR J. COLÓN VIDAL;**<br>**XIOMARA COLÓN ARROYO**<br>**Debtors** | **CASE NO. 15-02030 (ESL)**<br><br>**CHAPTER 13** |
| **JOSE R. CARRIÓN**<br>**Chapter 13 Trustee;** | **ADV. PROC. NO. 15-00282** |
| **VICTOR J. COLÓN VIDAL;**<br>**XIOMARA COLÓN ARROYO**<br>**Plaintiffs** | **PREFERENCE** |
| **v.** | |
| **SCOTIABANK DE PUERTO RICO**<br>**Defendant** | |

**OPINION AND ORDER**

This adversary proceeding is before the court upon a Motion for Summary Judgment (Docket No. 32) filed by the Debtors, subsequently adopted by the Chapter 13 Trustee (the "Trustee", Docket No. 46), seeking an order for the avoidance and cancellation of a cautionary notice of complaint ("*Aviso de Demanda*") that was filed in the Property Registry by creditor Scotiabank de Puerto Rico ("Scotiabank") and for Scotiabank's Claim No. 7 to be allowed as a general unsecured creditor. Scotiabank filed its *Opposition* thereto (Docket No. 42), to which Debtors replied (Docket No. 53). After considering all the arguments and pleadings, for the reasons stated herein, the Debtors' and Trustee's *Motion for Summary Judgment* (Docket Nos. 32 & 46) is granted and Scotiabank's *Opposition* (Docket No. 42) is denied.

Procedural Background

The Debtors filed a bankruptcy petition under Chapter 13 of the Bankruptcy Code on March 20, 2015 (Lead Case Docket No. 1). In Schedule A, Debtors listed a real property located

in Carr. 857 Km 6.5 Bo. Canovanillas, Sector Los Jimenez, calle Orozco, Carolina, Puerto Rico (the "Real Property") with a scheduled value of $220,000.00 (Lead Case Docket No. 1, p. 8). The Debtors also included Scotiabank an unsecured creditor in Schedule F (Creditors Holding Unsecured Non Priority Claims) in the amount of $132,446.00 (Schedule F, Lead Case Docket No. 1, p. 20). On July 20, 2015 Scotiabank filed a secured proof of claim in the amount of $136,979.80 (Claim No. 7-1).

On December 3, 2015, the Debtors filed the instant *Complaint* (Docket No. 1) claiming that Scotiabank's secured claim is based in a cautionary notice of complaint that was filed in the Carolina Property Registry (the "Property Registry") 64 days prior to the bankruptcy filing. Debtors aver that the cautionary notice enabled Scotiabank to procure a secured status that would allow the creditor to receive more than it would have received if the cautionary notice had not been recorded. Thus, they contend that the recordation of the cautionary notice constitutes a transfer of interest that occurred within 90 days prior to the bankruptcy petition and that the cautionary notice can be avoided as a preferential transfer under 11 U.S.C. § 547(b). Based on the foregoing, the Debtors seek an order to avoid Scotiabank's cautionary notice and have Claim No. 7 be deemed as unsecured.

On January 29, 2016, Scotiabank filed its *Answer to the Complaint* (Docket No. 10) admitting most of the factual allegations but denying the Debtors' legal conclusions. Scotiabank affirmatively alleges that the purpose of the civil action that gave rise to the cautionary notice is to record a mortgage through the mechanisms established in the Mortgage Law. The creditor argues that to the extent judgment is entered in their favor in the civil action pending before the Court of First Instance the inscription of their mortgage deed would relate back to the date in which the cautionary notice was filed in the Property Registry. As a result, Scotiabank contends

2

that the provisional entry created at the Property Registry by virtue of the filing of the cautionary notice would be converted into a properly and timely perfected permanent inscription of a mortgage, which is, a consensual lien.

On August 25, 2016, the Debtors filed a *Statement of Uncontested Material Facts* to which they attached the corresponding supporting documentary evidence. That same day, the Debtors filed their *Motion for Summary Judgment* and *Memorandum of Law in Support Thereof* (Docket Nos. 31 & 32). In essence, the Debtors sustain that the filing of the cautionary notice is a transfer under 11 U.S.C. § 547 and that it can be set aside and avoided because it happened 64 days prior to the bankruptcy petition.

In turn, Scotiabank filed its *Opposition to Motion for Summary Judgment and Memorandum of Law* on May 16, 2017 (Docket No. 42). The creditor contends that it acquired for value from R&G Mortgage the loan and the mortgage securing the loan presented for recording in the Registry of Property without knowing the future title issues of the mortgage due to the error in the description of the main land to which Plaintiff's parcel was to be segregated. Thus, Scotiabank argues that under 11 U.S.C. § 550(b) they are to be considered an immediate or mediate good faith transferee, not subject to the avoidable powers of the trustee (in this case, of the Plaintiffs).

On June 8, 2017, the Chapter 13 Trustee filed a *Motion Requesting to Join the Above-Caption Adversary Proceeding, to Ratify Averments and for Leave to Amend Complaint* (Docket No. 46). On June 16, 2017, the court granted the Trustee's *Motion* (Docket No. 46). On June 30, 2017, the Trustee filed an *Amended Complaint* (Docket No. 52) essentially to be added as plaintiff to the instant adversary proceeding.

3

On July 7, 2017, the Debtors filed a *Reply to Scotiabank's Opposition to Debtor's Motion for Summary Judgment* (Docket No. 53). The Debtors argue that Scotiabank's good faith transferee defense under 11 U.S.C. § 550(b) is inapplicable since debtors are only seeking to avoid a transfer under 11 U.S.C. § 547 and not recover property under 11 U.S.C. § 550.

Material Uncontested Facts

After considering the totality of the record, the court finds that the following material facts are uncontested:

1. The debtors are the owners of a property located at Carr. 857 Km 6.5 Bo. Canovanillas, Sector Los Jimenez, calle Orozco, Carolina Puerto Rico, PR 00987 ("the residence").

2. The debtors acquired this residence pursuant to a Deed of Segregation and Sale executed on April 16, 2002 before notary public Agustín R. Hernández.

3. The Deed of Sale and Segregation was filed in the Property Registry.

4. On May 19, 2005, debtors executed a Deed of Mortgage in favor of R&G Mortgage to secure a note in the amount of $144,000.00.

5. On May 31, 2005, debtors executed a Deed of Amendment of Mortgage.

6. The Deed of Mortgage and the Deed of Amendment of Mortgage were filed in the Property Registry.

7. The Property Registry notified defects to the Deed of Segregation and Sale, the Deed of Mortgage, and the Deed of Amendment of Mortgage.

8. The defects notified by the Property Registry were not corrected. As such the entry of presentation of said documents expired.

4

9. R&G Mortgage assigned the debtors' loan, including the mortgage note and Deed of Mortgage, to Scotiabank.

10. On October 29, 2014, Scotiabank filed a civil lawsuit against the debtors in the Court of First Instance, Carolina Part ("Court of First Instance").

11. In the complaint, Scotiabank states that the mortgage executed by the Debtors could not be recorded due to failure to correct the defects notified by the Property Registry.

12. Scotiabank requested the Court of First Instance to enter judgment ordering the Property Registry to record the Deed of Segregation and Sale, the Deed of Mortgage, and the Deed of Amendment of Mortgage.

13. Simultaneously with the filing of the complaint, Scotiabank filed a *Motion Requesting the Court to Authorize a Cautionary Notice of Complaint*.

14. On November 10, 2014, the Court of First Instance issued an Order directing the Property Registry to enter a cautionary notice of complaint over debtors' residence. The Court also issued a Writ for the execution of the Order ("mandamiento") directing the court's marshal to file copy of the Order in the Property Registry.

15. On January 13, 2015, the cautionary notice Order was filed in the Property Registry.

16. On January 15, 2015, the Property Registry entered a cautionary notice of complaint over debtors' property.

17. On March 20, 2015, the debtors filed for bankruptcy.

18. On Schedule A of the petition, the debtors informed that they are the owners of a real property located in Carr. 857 Km 6.5 Bo. Canovanillas, Sector Los Jimenez, calle Orozco, Carolina Puerto Rico. The debtors valued their property in $220,000.00.

19. The debtors executed a sworn statement under penalty of perjury declaring that the property identified in Schedule A was their principal residence, that it was used for residential purposes only, and that they had designated the property as their homestead pursuant to the Puerto Rico Homestead Act. The debtors included copy of the Sworn Statement with their schedules.

20. On Schedule C of the petition, the debtors claimed the full value of the property ($220,000.00) exempt pursuant to the PR Homestead Act.

21. Debtors' claimed exemptions were not objected by any party.

22. The debtors reported no secured creditors in Schedule D of the petition.

23. In Schedule F of the petition, the debtors listed Scotiabank as the holder of an unsecured claim in the amount of $132,446.39.

24. On July 20, 2015 Scotiabank filed a secured proof of claim in the amount of $136,979.80 (Claim No. 7-1).

25. Scotiabank's Proof of Claim indicates that the basis for perfection of the claim is *"Mortgage/Recorded 'Aviso de Demanda'"*. The creditor attached to its Proof of Claim a copy of the Cautionary Notice Order entered by the Court of First Instance.

26. At the date of the filing of the petition, and still today, the Deed of Mortgage executed by the debtors is neither presented nor recorded in the Property Registry.

27. As per debtors' schedules, they have non-exempt assets in the amount of $20,000.00 and liabilities in the amount of $207,312.38.

<u>Issues</u>

In the instant case, there are three issues that the court must address. First, whether the entry of a cautionary notice of complaint in the Property Registry constitutes a "transfer" under

6

11 U.S.C. § 547. If so, then the court must determine if Scotiabank's cautionary notice meets the requirements of 11 U.S.C. § 547 to be avoided. Lastly, the court must evaluate if after avoidance of the cautionary notice, Scotiabank is entitled to claim the "good faith transferee" defense under 11 U.S.C. § 550.

Applicable Law & Discussion

*Standard for Summary Judgment*

Fed. R. Civ. P. 56, applicable to this proceeding through Fed. R. Bankr. P. 7056, provides that summary judgment should be entered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." See Fed. R. Bankr. P. 7056 and In re Colarusso, 382 F.3d 51, 58 (1st Cir. 2004), citing Celotex Corp. v. Catrett, 477 U.S. 317, 322-323 (1986).

"The summary-judgment procedure authorized by [Fed. R. Civ. P. 56] is a method for promptly disposing of actions in which there is no genuine issue as to any material fact or in which only a question of law is involved." 10A Wright, Miller & Kane, Federal Practice and Procedure: 3d § 2712, p. 198. "Rule 56 provides the means by which a party may pierce the allegations in the pleadings and obtain relief by introducing outside evidence showing that there are no fact issues that need to be tried." Id. at 202-203. Summary judgment is not a substitute for a trial of disputed facts; the court may only determine whether there are issues to be tried, and it is improper if the existence of a material fact is uncertain. Id. at 205-206.

Summary judgment is warranted where a party fails to make a showing sufficient to establish the existence of an element essential to its case and upon which it carries the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The moving party must "show

7

that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

For there to be a "genuine" issue, facts which are supported by substantial evidence must be in dispute thereby requiring deference to the finder of fact. Furthermore, the disputed facts must be "material" or determinative of the outcome of the litigation. Hahn v. Sargent, 523 F.2d 461, 464 (1st Cir. 1975), cert. denied, 425 U.S. 904 (1976). When considering a petition for summary judgment, the court must view the evidence in the light most favorable to the nonmoving party. Poller v. Columbia Broadcasting Systems, Inc., 368 U.S. 464, 473 (1962); Daury v. Smith, 842 F.2d 9, 11 (1st Cir. 1988).

The moving party invariably bears both the initial as well as the ultimate burden in demonstrating its legal entitlement to summary judgment. Adickes v. Kress & Co., 398 U.S. 144, 157 (1970); see also, López v. Corporación Azucarera de Puerto Rico, 938 F.2d 1510, 1516 (1st Cir. 1991). It is essential that the moving party explain its reasons for concluding that the record does not contain any genuine issue of material fact in addition to making a showing of support for those claims for which it bears the burden of trial. Bias v. Advantage International, Inc., 905 F.2d 1558, 1560-61 (D.C. Cir. 1990), cert. denied, 498 U.S. 958 (1990).

The moving party cannot prevail if any essential element of its claim or defense requires trial. López, 938 F.2d at 1516. In addition, the moving party is required to demonstrate that there is an absence of evidence supporting the nonmoving party's case. Celotex, 477 U.S. at 325. See also Prokey v. Watkins, 942 F.2d 67, 72 (1st Cir. 1991); Daury, 842 F.2d at 11. In its opposition, the nonmoving party must show genuine issues of material facts precluding summary judgment; the existence of some factual dispute does not defeat summary judgment. Kennedy v. Josepthal & Co., Inc., 814 F.2d 798, 804 (1st Cir. 1987). See also Kauffman v. Puerto Rico Telephone Co.,

8

841 F.2d 1169, 1172 (1st Cir. 1988); Hahn, 523 F.2d at 464. A party may not rely upon bare allegations to create a factual dispute but is required to point to specific facts contained in affidavits, depositions and other supporting documents which, if established at trial, could lead to a finding for the nonmoving party. Over the Road Drivers, Inc. v. Transport Insurance Co., 637 F.2d 816, 818 (1st Cir. 1980).

The moving party has the burden to establish that it is entitled to summary judgment; no defense is required where an insufficient showing is made. López, 938 F.2d at 1517. The nonmoving party need only oppose a summary judgment motion once the moving party has met its burden. Adickes, 398 U.S. at 159.

The court is required to view the pleadings in their entirety when passing a request for summary judgment. 10A Wright, Miller & Kane, Federal Practice and Procedure: Civil 3d § 2722 at 368. To do so, it may consider affidavits, depositions, admissions, answers to interrogatories and similar material to determine whether or not any of the post-pleading material suggests the existence of any other triable genuine issues of material fact. Id. § 2721 at 365-366.

In the instant case, the court finds that the material facts are not in dispute. Thus, summary judgment is warranted.

*Cautionary notice of complaint*

Puerto Rico's Mortgage and Property Registry Law[1] provides for different types of "cautionary notices" that may be recorded in the Property Registry. A "cautionary notice" is a provisional entry recorded in Property Registry for the primary purpose of subjecting property to

---

[1] The Mortgage Act of 2015 does not apply to the facts of the instant case since the same was enacted on December 8, 2015 and became effective 90 days thereafter.

9

the remedy obtained in a pending legal proceeding. Correa Sanchez v. Registrar, 113 D.P.R. 581

(1982).

Article 112 of the Mortgage and Property Registry Law, 30 L.P.R.A. § 2401, in part

provides:

> "The following may request that cautionary notices on their respective
> rights be entered in the Registry:
> 1st. A person who, in a lawsuit, claims ownership to real property or the
> constitution, declaration, modification or extinction of any recordable right
> or one who files his claim in an action that affects a title to real property,
> or on the validity and force, or the lack of validity or force, of the title or
> titles involved in the acquisition, constitution, declaration, modification or
> extinction of the above-cited recordable rights."

The cautionary notice obtained under sec. 1st of Article 112 is known as the cautionary

notice of complaint ("*anotación preventiva de demanda*"). The Puerto Rico Supreme Court has

explained that the cautionary notice of complaint has the purpose of preserving the due respect to

the administration of justice, avoiding that the judicial judgments become inofficious by acts of

the defendant which prevent the execution of a judgment. It does not give nor take away rights.

It only takes to the registry the existence of a suit which may place in jeopardy the recorded title.

Its virtue consists, then, in making known to *future* acquirers the existence of a litigation whose

result may be prejudicial to their interests. It is a simple warning which warns the *subsequent*

acquirers of possible causes for nullity of the recorded titles so that they may not allege, later,

ignorance of those causes of nullity. Segarra v. Vda. De Lloréns Torres, 99 D.P.R. 60, 69-70

(1970): See also Neiner v. Marino, 1996 WL 406783 (D.P.R.1996) and In re Mb Joma, Inc., 403

B.R. 146 (B.A.P. 1st Cir., 2009).

"The 'cautionary notice,' a creature of Puerto Rico law, is roughly analogous to the

Anglo-American notice of *lis pendens*". Casal, In re, 998 F.2d 28, 33 (C.A.1 (Puerto Rico),

10

1993) citing <u>Cruz La Corte v. Mojica Sandoz</u>, 109 D.P.R. 354 (1980) and <u>Correa Sanchez v. Registrar</u>, 113 D.P.R. 581 (1982).   Their purpose is to give notice to the world of a potential claim on real property. <u>Echevaría Jiménez v. Sucn. Pérez Meri</u>, 123 DPR 664, 679 (1989).  In <u>Correa Sanchez</u>, the Puerto Rico Supreme Court stated:

> "despite the differences we had acknowledged between the entry of the notice of lis pendens . . . and the cautionary notice . . . both mechanisms converge in the common purpose of subjecting the property in question to the outcome of the suit filed, placing any person acquiring dominion or any real right over the property in question in the position of an acquirer pendente lite." Id. Official Translations at 760.

See also Luis R. Rivera Rivera, <u>Derecho Registral Inmobiliario</u>, Jurídica Editores, 2002, page 452.[2]

Section 547(e)(1) of the Bankruptcy Code Courts provides a definition for when a "transfer" is considered perfected for purposes of avoidance action under 11 U.S.C. § 547:

> "(e)(1) For the purposes of this section—
> (A) a transfer of real property other than fixtures, but including the interest of a seller or purchaser under a contract for the sale of real property, is perfected when a bona fide purchaser of such property from the debtor against whom applicable law permits such transfer to be perfected cannot acquire an interest that is superior to the interest of the transferee;"

"[T]he definition of a transfer under section 547 is unambiguous: a transfer is perfected when a subsequent purchaser cannot acquire a superior interest." <u>Hurst Concrete Products, Inc. v. Lane (In re Lane)</u>, 980 F.2d 601, 605 (9th Cir.1992). See also <u>Melaragno v. CitiMortgage</u> (In re Sandman), 2013 WL 3991971 at *3, No. 12–10339TPA (Bankr.W.D.Penn. Aug. 1, 2013); <u>In</u>

---

[2] "La anotación preventiva de demanda es una figura con una historia particular en el derecho puertorriqueño que tuvo que convivir por largo trecho con la anotación de pleito pendiente (lis pendens).  Su origen data del art. 42 (1) de la Ley Hipotecaria de 1893, mientras que la anotación de lis pendens, de estirpe angloamericana, fue introducida por el art. 91 del Código de Enjuiciamiento Civil de 1904.  Ambos institutos perseguían el mismo fin: notificar un pleito pendiente sobre una propiedad. Luis R. Rivera Rivera, Derecho Registral Inmobiliario, Jurídica Editores, 2002, page 452.

11

re Whitehead, 399 B.R. 570, 573 (Bankr.S.D.Fla.2009). Relying on the definition of transfer found in Section 547(e)(1), bankruptcy courts sitting in jurisdictions that employ the *lis pendens* mechanism have held that a notice of *lis pendens* qualifies as a "transfer" for purposes of 11 U.S.C § 547. See Henderson v. Bank of America (In re Simmons) 510 B.R. 76 (Bankr. S.D. Miss. 2014); Mason v. Ocwen Loan Servicing (In re Votaw) Case 10-63744 (Bankr. N.D. Ohio 2012); In re Whitehead, 399 B.R. 570, 573 (Bankr.S.D.Fla.2009) ("filing of a *lis pendens* constitutes perfection under § 547(e)(1)"); Melaragno v. CitiMortgage (In re Sandman), 2013 WL 3991971 at *3, No. 12–10339TPA (Bankr.W.D.Penn. Aug. 1, 2013) ("lis pendens does not create a lien but § 547(e)(1) does not require a lien to be created for a transfer to occur"). These courts have articulated that the notice of *lis pendens* gives "notice to the world" of a potential claim on real property thereby placing the claimant with a superior interest to that of a hypothetical future bona fide purchaser. Thus, the notice of *lis pendens* fits within the definition of perfection codified on 11 U.S.C. § 547(e)(1).

Under Puerto Rico Law, an entry recorded in the Property Registry has the effect of giving constructive notice to the world of an interest over real property. This characteristic is known as the principle of publicity of the registry. Luis Rivera Rivera, Derecho Registral Inmobiliario de Puerto Rico, Second Edition, 2002, pages 95-96. As such, after a cautionary notice has been entered, every person who acquires any interest in the property takes subject to, and is conclusively bound by, the judgment in such litigation. See Correa Sánchez v. Registrador, 113 DPR 581 (1982). In this sense, a cautionary notice and a *lis pendens* have the same effect, they prevent a bona fide purchaser from prevailing in a claim for superior title over the property.

In the instant case, Scotiabank filed a civil lawsuit against the debtors in the Court of First Instance, Carolina Part ("Court of First Instance"). In the complaint, Scotiabank states that the mortgage executed by the Debtors could not be recorded due to failure to correct the defects notified by the Property Registry. Scotiabank requested the Court of First Instance to enter judgment ordering the Property Registry to record the Deed of Mortgage executed by the debtors. To prevent third parties from claiming a superior title over the property, Scotiabank filed a *Motion Requesting the Court to Authorize a Cautionary Notice of Complaint*. The Court of First Instance granted Scotiabank's motion and on January 15, 2015, the Property Registry entered a cautionary notice of complaint over debtors' property. Once this cautionary notice was entered, the world was put on notice of Scotiabank's claim over Debtors' property. Thus, the Court finds that the cautionary notice was a "transfer" as contemplated under 11 U.S.C. § 547 because a bona fide purchaser "cannot acquire an interest that is superior to the interest" of Scotiabank.

Having determined that the cautionary notice constitutes a "transfer", the court will now address whether the cautionary notice meets the remaining requirements of 11 U.S.C § 547 to be avoided as a preference.

*Avoidance of a Preference under 11 U.S.C. § 547*

"Equality of distribution among creditors is a central policy of the Bankruptcy Code." *Begier v. IRS*, 496 U.S. 53, 56 (1990). To further that policy, Sections 544, 547, 549 & 550 of the Bankruptcy Code, commonly known as the avoidance powers, provide the trustee with certain faculties to maximize the value of the bankruptcy estate and ensure common treatment of similarly situated creditors. These powers enable the trustee to recover property for the estate, set aside certain liens, avoid certain transfers, and reject or assume executory contracts and

13

unexpired leases. See Nancy C. Dreher and Joan N. Feeny, Bankruptcy Law Manual, Volume 2 § 9:1 (2011-12), p. 203. Our current Bankruptcy Code follows the "strong arm" clause of the former Bankruptcy Act by giving the rights and powers of a judicial lien creditor as of the date of the bankruptcy. Id., § 9:2, p. 208 and 11 U.S.C. § 544(a)(1).

Section 547 deals with pre-petition preferential transfers made by debtors. "A preference involves payment of a debt that violates de bankruptcy principle of equal distribution among all creditors." Alan N. Resnick & Henry J. Sommer, 5 Collier on Bankruptcy ¶ 547.01 (16th ed. 2012). This definition must be construed "as broad as possible". Alan N. Resnick & Henry J. Sommer, 5 Collier on Bankruptcy ¶ 547.03 (16th ed. 2012), quoting from S. Rep. No. 989, 95th Cong., 2nd Sess. 27 (1978), reprinted in App. Pt. 4(e)(i).

The drafters of the Bankruptcy Code explained the purpose of Section 547 as follows:

> The purpose of the preference section is two-fold. First, by permitting the trustee to avoid pre-bankruptcy transfers that occur within a short period before bankruptcy, creditors are discouraged from racing to the courthouse to dismember the debtor during his slide into bankruptcy. The protection thus afforded the debtor often enables him to work his way out of a difficult financial situation through cooperation with all of his creditors. Second, and more important, the preference provisions facilitate the prime bankruptcy policy of equality of distribution among creditors of the debtor. Any creditor that received a greater payment than others of his class is required to disgorge so that all may share equally. The operation of the preference section to deter 'the race of diligence' of creditors to dismember the debtor before bankruptcy furthers the second goal of the preference section-that of equality of distribution. H.R. Rep. No. 595, 95th Cong. 1st Sess. 177-78 (1977), U.S. Code Cong. & Admin. News, 1978, pp. 5787, 6138.

A trustee may avoid certain preference transfers if the requirements of Section 547(b), infra, are met:

> Except as provided in subsections (c) and (i) of this section, the trustee may avoid any transfer of an interest of the debtor in property--
> (1) to or for the benefit of a creditor;

14

(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

(3) made while the debtor was insolvent;

(4) made--

    (A) on or within 90 days before the date of the filing of the petition; or

    (B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and

(5) that enables such creditor to receive more than such creditor would receive if--

    (A) the case were a case under chapter 7 of this title;

    (B) the transfer had not been made; and

    (C) such creditor received payment of such debt to the extent provided by the provisions of this title. 11 U.S.C. § 547(b).

The extent of the Trustee's avoidance powers are determined by state law. See Soto-Rios v. Banco Popular de P.R. (In re Soto-Rios), 662 F.3d 112, 116 (1st Cir. 2011) ("the bankruptcy trustee ... may ordinarily avoid any transfer of the property or obligation of the debtor to the extent allowed under state law"); Abboud v. The Ground Round, Inc., 482 F.3d 15, 20 (1st Cir. 2007); Trask v. BAC Home Loans Servicing, LP (In re Trask), 462 B.R. 268, 273 (B.A.P. 1st Cir. 2011). After all, "property interests are created and defined by state law." Stern v. Marshall, 131 S. Ct. 2594, 2616, 180 L.Ed. 2d 475, 502 (2011), citing Travelers Casualty & Surety Co. of America v. Pacific Gas & Elec. Co., 549 U.S. 443, 451 (2007) and Butner v. United States, 440 U.S. 48, 55 (1979). See also Taylor v. Rupp (In re Taylor), 133 F.3d 1336, 1341 (10th Cir. 1998) ("The existence and extent of [the debtor's interest in the property] is determined by state law"); Allan N. Resnick and Henry J. Sommes, 5 Collier on Bankruptcy, ¶ 547.06(1) (16th ed. 2012). "Once that state law determination is made, however, we must still look to federal bankruptcy law to resolve" the extent to which that interest is property of the estate. Rine & Rine Auctioneers, Inc. v. Myers (In re Rine & Rine Auctioneers, Inc.), 74 F.3d 854, 857 (8th Cir. 1996).

15

"The five characteristics of an avoidable transfer are that it: (1) benefit a creditor; (2) be on account of antecedent debt; (3) be made while the debtor was insolvent; (4) be made within 90 days before bankruptcy; and (5) enable the creditor to receive a larger share of the estate than if the transfer had not been made." Union Bank v. Wolas, 502 U.S. 151, 154-155 (1991). See also BBVA v. Wiscovitch-Rentas (In re Net-Velazquez), 625 F.3d 34, 38 (1st Cir. 2010) ("Under section 547(b) of the Bankruptcy Code, the trustee of an estate in bankruptcy may avoid any transfer of an interest of the debtor in property made (1) to a creditor, (2) on account of an antecedent debt, (3) while the debtor was insolvent, (4) during the 90-day period preceding the filing of the petition, which (5) allowed such creditor to receive more than it would have under Chapter 7.")

The Debtors and the Trustee argue that, in the instant case, Scotiabank's cautionary notice is an avoidable transfer because it meets the criteria set forth in 11 U.S.C. § 547. They contend that Scotiabank does not have a duly perfected mortgage because the Property Registry notified defects to the Deed of Mortgage and those defects were not corrected. The plaintiffs allege the cautionary notice only benefits Scotiabank and that the mortgage arose on account of an antecedent debt to secure a loan made to the debtors on May 19, 2005. Finally, that without the cautionary notice, Scotiabank would be considered a general unsecured creditor under a Chapter 7 proceeding. See Dockets Nos. 31, 32 and 53. Scotiabank does not dispute any of these contentions. Instead, it argues that under 11 U.S.C. § 550(b) they are to be considered an immediate or mediate good faith transferee, not subject to the avoidable powers of the trustee (in this case, of the Plaintiffs).

The court finds that Scotiabank's cautionary notice is avoidable because the requirements of Section 547 are met: (1) the entry of the cautionary notice on January 13, 2015 only benefits

16

Scotiabank inasmuch as it would make it a secured creditor when it had been unsecured; (2) the cautionary notice arose on account of an antecedent debt of a loan made to the debtors on May 19, 2005; (3) the Debtors were insolvent when they filed for bankruptcy and sixty four days prior when the cautionary notice was entered at the Property Registry[3]; (4) the transfer was made within the 90-day period prior to the filing of the bankruptcy petition; and (5) it would enable the Scotiabank to receive more than it would under Chapter 7.

*Recovery under 11 U.S.C. § 550*

The remaining issue to be addressed is one of law, whether Scotiabank, a creditor whose cautionary notice is avoided pursuant to Section 547, is entitled to the "good faith transferee" defense of Section 550 of the Code.  Scotiabank argues that it acquired for value from R&G Mortgage the loan and the mortgage securing the loan presented for recording in the Registry of Property without knowing the future title issues of the mortgage due to the error in the description of the main land to which Debtors' parcel was to be segregated. Thus, the creditor claims that they meet the requirements to be considered a "good faith transferee" under 11 U.S.C. § 550(b) and therefore that Debtors are not allowed to avoid the cautionary notice.

In pertinent part, Section 550 provides that:

> (a) Except as otherwise provided in this section, to the extent that a transfer is avoided under section 544, 545, 547, 548, 549, 553(b), or 724(a) of this title, the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from—
> > (1) the initial transferee of such transfer or the entity for whose benefit such transfer was made; or
> > (2) any immediate or mediate transferee of such initial transferee.

---

[3] A debtor is deemed insolvent within 90 days prior to the bankruptcy petition pursuant to 11 U.S.C. § 547(f). Although Scotiabank stated in its *Answer to the Complaint* that the debtors were not insolvent, it failed to address this issue in the *Opposition to Debtors' Motion for Summary Judgment.*  As it will be discussed, Scotiabank's *Opposition* was limited to the "good faith transferee" defense under Section 550. Thus, the court finds that when the transfer was made on January 13, 2015, the Debtors were insolvent.

(b) The trustee may not recover under section [1] (a)(2) of this section from—

(1) a transferee that takes for value, including satisfaction or securing of a present or antecedent debt, in good faith, and without knowledge of the voidability of the transfer avoided; or

(2) any immediate or mediate good faith transferee of such transferee.

Section 550 provides that to the extent a transfer is avoided pursuant to various sections, including § 547, the trustee may recover the property transferred, or its value, for the benefit of the estate, from the initial transferee or any immediate or mediate transferee of such initial transferee. 11 U.S.C. § 550(a). However, the trustee may not recover from "a transferee that takes for value, including satisfaction or securing of a present or antecedent debt, in good faith, and without knowledge of the voidability of the transfer avoided". 11 U.S.C. § 550(b). In re VJ Int'l, Inc., 359 B.R. 401, 409; In re Schwartz, 383 B.R. 119, at 125.

The good faith transferee defense applies only to actions for **recovery** of property, not to actions where the trustee seeks only to **avoid** the transfer. In re Congress Credit Corporation v. AJC International, 186 B.R. 555 (D. Puerto Rico 1995); In re Schwartz, 383 B.R. 119 (B.A.P. 8th Cir., 2008); In re Williams, 234 B.R. 801 (Bankr. Or., 1999); In re Burns, 269 B.R. 20 (B.A.P. 6th Cir., 2001); In re Priest, 268 B.R. 135 (Bankr. N.D. Ohio, 2000). An 'avoidance' of a transfer under section 547 is different from the 'recovery' of property under section 550. In re Congress Credit Corporation, 186 B.R. 555, at 558. Under section 547, the trustee is given the power to avoid any transfer to a creditor within ninety days before the bankruptcy petition which places the creditor in a better position on the date of the bankruptcy petition than such creditor was in before such transfer was made. In re Schwartz, 383 B.R. 119, at 123. The effect of avoidance is that it "nullifies the transfer". As a result, the transferred property becomes a part of the estate automatically. In re Congress Credit Corporation, 186 B.R. 555, at 558.

18

As avoidance and recovery are independent remedies, the Trustee is not required to recover the property if avoidance alone gives him an adequate remedy. "Avoidance is always necessary for recovery, but recovery is not always necessary or even useful after avoidance." David G. Epstein et al., Bankruptcy § 6-79, at 201, cited in In re Burns, 269 B.R. 20, at 27. In certain instances, avoidance of a transfer is sufficient to undo the preferential transfer and make the estate whole. "For example, the avoidance of a lien on property under Section 547 is a sufficient remedy where the property is part of the estate and the avoidance results in the value of the avoided lien becoming available for liquidation and distribution to creditors." In re Schwartz, 383 B.R. 119, at 126; In re Vondall, 352 B.R. 193 (Bankr.D.Minn.2006). See also In re Williams, 234 B.R. 801, at 804 ("If the Trustee prevails and avoids the security interest, there is no need for the trustee to resort to Code § 550 for recovery"). This same conclusion has been reached in cases where avoidance was sought under §544 of the Code. See In re Priest, 268 B.R. 135, at 139 ("Because §§ 544 and 550 provide independent remedies, the trustee need not pursue recovery of property from the transferee if avoidance alone is an adequate remedy"). See also In re Burns, 269 B.R. 20 (B.A.P. 6th Cir., 2001).

Accordingly, Courts that have been faced with this issue have explicitly held that when a trustee only seeks to avoid a transfer, but not to recover property, a defendant cannot raise a defense under Section 550. See In re Burns, 269 B.R. 20, at 25 ("We conclude that § 550 does not apply at all, because the trustee has not sought recovery of any property or its value from IMC); In re Priest, 268 B.R. 135, 139 ("Given that, there is no need for the Trustee to recover Countrywide's interest under § 550 the defenses provided by § 550 are not available to Countrywide").

19

To determine if avoidance alone gives the Trustee a complete remedy, it is necessary to consider the different property interests that make up the bankruptcy estate. A Chapter 13 bankruptcy estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. §§ 1306(a) and 541(a)(1). Property rights are defined by state law. Barnhill v. Johnson, 503 U.S. 393 (1992).

The Puerto Rico Civil Code defines ownership as the right to use, enjoy and dispose of property. P.R. Civil Code Art. 280, 31 L.P.R.A. § 1112. Under the Puerto Rican civil tradition, a lien on real property does not deprive the owner of its rights to use, enjoy or dispose of the property. Not even a voluntary lien, such as a mortgage, deprives owner of its rights to use, enjoy and sell the property. "Owners of [mortgaged] property retain the right to sell or dispose of their property, while mortgage holders have the right to pursue the mortgaged property, wherever it may be, in order to collect from the amount obtained through judicial foreclosure." Luis Rafael Rivera Rivera, Derecho Registral Inmobiliario Puertorriqueño, Second Edition, 2002, page 481. In this sense, the Puerto Rican civilian tradition is akin with a common law jurisdiction that applies the "lien theory" to mortgages, as opposed to the "title theory".[4]

In the case of In re Congress Credit Corporation v. AJC International, 186 B.R. 555 (D. Puerto Rico 1995) this court stated the following:

> "An 'avoidance' of a transfer under section 547 is different from the 'recovery' of the property under section 550. An avoidance nullifies the transfer. As a result, the transferred property becomes a part of the estate automatically. A recovery, on the other hand, forces the transferee to

---

[4] Under the title theory, legal 'title' to the mortgaged real estate remains in the mortgagee until the mortgage is satisfied or foreclosed. In contrast, in lien theory jurisdictions, the mortgagee is regarded as owning a security interest only and both legal and equitable title remain in the mortgagor until foreclosure. The practical effect of these distinctions is that under the 'title theory' the mortgagee may enter into possession of the mortgaged premises upon default and before foreclosure, whereas under the 'lien theory' there is no right of possession; the mortgagee must await sale of the mortgaged property and obtains satisfaction of the mortgagor's debt from the proceeds of sale. In re Cormier, 434 B.R. 222, footnote no. 6 (Bankr.Mass., 2010).

20

return the property or become personally liable for its value. When the property is subject to a creditor's lien or other interest and has not yet been transferred to a third party, an action for recovery is unnecessary. Through avoidance alone, the trustee holds the property free of the lien or other interest." In re Congress Credit Corporation v. AJC International, 186 B.R. 555, at 558 (D. Puerto Rico 1995)

In the instant case, the Debtors filed an action to avoid a cautionary notice that was recorded over their real property 64 days prior to the filing of the petition. Debtors' interest in the property became property of the estate at the time of filing. The debtors have been in possession of their home since the time of filing and have remained continuously in possession. Scotiabank's does not have control nor possession of Debtors' property. Scotiabank holds an unsecured mortgage since there is no controversy over the fact that the Deed of Mortgage was notified with defects that where not corrected. Scotiabank sole basis for claiming secured status is that a cautionary notice of complaint was recorded in the Property Registry. Avoiding the cautionary notice will convert Scotiabank's claim in an unsecured one. Therefore, the debtor's do not need to resort to recovery under Section 550. With avoidance alone, the Debtors will hold the entire interest over the property, free of the cautionary notice. Accordingly, the court finds that 11 U.S.C. § 550 is inapplicable to the instant case and, therefore, that defenses under such provision are not available to Scotiabank.

Conclusion

For the reasons stated herein, the Debtor's and the Trustee's Motion for Summary Judgment (Docket Nos. 31, 32 & 53) is hereby granted and Scotiabank's Opposition thereto (Docket No. 42) is hereby denied. Consequently, upon the avoidance of the Scotiabank's cautionary notice, Scotiabank's Claim Register No. 7 is hereby allowed as a general unsecured claim.

21

Judgment shall be entered accordingly

In San Juan, Puerto Rico, this 4th day of December 2017.

SO ORDERED.

Enrique S. Lamoutte

United States Bankruptcy Judge

22